I'll try to reserve five minutes in this case. Mr. Lemley worked for an employer with an unwritten but firmly established and long-standing policy favoring Hispanics over all others. Years ago, as political payoff for the support of key Hispanic opinion leaders, the local elected judge appointed an Hispanic, Captain Aranda, to a position that was custom-made for him. Mr. Aranda used that position to promote Hispanics and protect them from discipline or discharge whenever possible. Throughout the time that he worked for Graham County, every day that he worked for Graham County, Mr. Lemley suffered the effects of this discriminatory policy. Early in his career, years before he was passed over, for a position that he deserved in order that an Hispanic could be promoted. After he became a supervisor, whenever he opposed this national origin-based discrimination, his continued employment would be threatened. When he exercised his authority to prevent ongoing and which would have affected his pay had he stayed, and slandered at work and in the community with accusations of an improper sexual relationship with a married subordinate. When he objected to this slander, his assistant, Mrs. Miller, was demoted and reassigned, leaving him an impossible workload to prepare for an earliest possible time, she was required to take time off work and not allowed to earn overtime as other males and Hispanics were allowed to do. When Mr. Lemley opposed this discrimination, he was instantaneously punished with a requirement that he immediately take time off work and use vacation time instead of his true compensatory time. Throughout his career, unlike Captain Aranda, Mr. Lemley was not allowed to take compensatory time in a timely manner. At the end of his career, he was not paid for that accrued compensatory time, as Hispanics leaving similar employment at that facility had been paid. Let me interrupt you and just ask you a couple of questions. So I want to make sure I understand what your claims are here. Do you have a failure to promote claim in this case? He has alleged that early in his career, years before, he applied for a promotion to sergeant, and Mr. Castro, a Hispanic, was given the position and said, and Mr. Aranda told him, you know, you're really better qualified, but he was never given a chance. And this is in 2001, is that right? Way back, yes. And then later he got promoted to the same position, right? When there was no Hispanic applicant available. And then he was promoted again. So are you really contending that there's a failure to promote claim that dates to 2001? I'm contending that there was national origin discrimination. When? Every day and continuing today from the time that Mr. Aranda was given that patronage position. Let me return to the question and seek a yes or no answer. Are you asserting a failure to promote claim? Yes. And the failure to promote claim, the failure to promote occurred at what time? I believe 2001 is the date that the judge from Rhode Island said. But the significance of that is... That it's untimely. Why is that not untimely? I will answer that question. Christmas only comes once a year, but it comes regularly. And just because it only happens... I understand how you can try to cite what happened before as demonstration of discrimination. But I don't understand how you can claim a cause of action for something that happened 13 years, 14 years ago, when in fact he was subsequently promoted not just to that position, but to a higher position. So how is there an injury resulting for which you can claim damages for the failure to promote in 2001? For what are you claiming damages? Well, he should have received the pay... You are seeking in this lawsuit the pay that he didn't receive between 2001 and the date that he was ultimately promoted to sergeant. And the theory, yes, and the theory upon which we're doing that is there is a systemic, systematic, across-the-board preference for Hispanics. And it started the day he began working there, and it continued not only while he worked there, but after he left his employment and he wasn't allowed to get the same pay that Hispanics were allowed to get. Can you cite any precedent that opens the door to that claim for damages for an event in 2001? I cannot cite a case, but the theory would be that if there is a system and he's been continuously employed in a discriminatory system and that continues to the time within the charge statute of limitations, then it's a continuing violation. But the only, if I understand your claim, because he was promoted in 2003 to sergeant, in 2005 to lieutenant, the only claim you can have, the damages have to run between 2001 and 2003. So that's over 10 years before the charge is brought. You really think that's timely? I think it's part of a pattern of discrimination and it's ongoing and continuing. Let me ask you another question. I understand the district court's ruling that the court held that the county had set forth legitimate nondiscriminatory reasons for these various items that are complained of in the complaint and that the plaintiff had failed to come forward with any evidence showing pretext, using a classic McDonnell Douglas standard. And if I understand your briefs in this case, you think the McDonnell Douglas approach should not apply. And I'm having a hard time understanding what it is that you think the standard is that applies in this case. The standard is that, and I'm quoting from a Supreme Court case in my brief, is if they intentionally, if the plaintiff intentionally discriminates against the defendant on the basis of a prohibited classification, then it violates Title VII. There's a lot of square holes and they try to say you have to have a square peg to go into your square hole. But Title VII is bigger than McDonnell Douglas and the Supreme Court in the cases I've cited in my brief says that. And this judge said you have to bring me a square peg to put in a square hole. And we say, no, it's a round hole and it's big enough to accommodate. It's just like throwing a two-by-four into a trash can. Title VII is bigger than McDonnell Douglas. And the Supreme Court has said we never intended this to be a mechanical or ritualistic thing. It's just supposed to be a helpful way. What did you think they created it for? I mean, it was created to try to structure the consideration of evidence. And there may be cases, and the Supreme Court I think has described the basis for some cases to take a different approach. But I guess I have the same confusion that Judge Smith does. I haven't discerned from your brief an explanation of why this case shouldn't be reviewed in the same way that most cases are. It sounds to me like you're saying, but this is discrimination. Well, all these claims are claims of discrimination. McDonnell Douglas is intended to give us a structure. And that's the structure we're expected to apply, unless there's a good reason not to. As I was responding to the motion for summary judgment, I started with the Rogers case, which was a nurse working in a place where they were discriminating against, racially discriminating against patients. And what I was looking at is it's an unacceptable employment practice to provide a workplace that is permeated or polluted with discrimination. And I'm at my five minutes that I want to reserve. Thank you. Starting off with the Rogers case, my recollection of the Rogers case is that it was a hostile work environment claim. Hostile work environment is not being asserted by Mr. Lemley. He's asserting retaliation, and he's asserting disparate treatment. Again, under the Morgan standard, anything that happened after December 2009 are the only actionable events to which he is allowed to bring a claim for money damages. There's no reason why this Court ought to differ or divert its attention from the McDonnell Douglas analysis in this case. It seems that Mr. Lemley suggests that this Court do that because of, as he describes it, this sordid history that permeated the workplace. But what he's really talking about, I think, is the concept that even untimely acts could hypothesize that there was a case under the McDonnell Douglas framework, specifically with respect to pretext. That he hasn't argued that in this case, and he hasn't shown to this Court how anything that happened prior to December 2009 should cause this Court to consider the county's profit reasons for the actions it took in this case. That's what he would have to do, and that's the only permissible use for the alleged acts that occurred prior to December 2009. Could I ask you a question? There's two issues I want to ask you about. One is that apparently, and I think the parties agree on this, the district court used an outdated set of the local rules to make the defendant's statement of undisputed facts had to be considered as undisputed when, in fact, the local rule had been changed to give the Court, not make that mandatory, but rather discretionary. Does that make any difference in this case? No, I don't think it does. I don't think it makes any difference at all. Because I don't think that Mr. Lemley has made out either a prima facie case of disparate treatment or retaliation, and he hasn't met his burden to prove that the county's proffered reasons for doing what it did with respect to his employment were anything but legitimate and nondiscriminatory. And I think even if you take all of the evidence and consider all of the evidence here and give Mr. Lemley the benefit of the doubt on everything that's admissible or would be admissible had he properly disputed the statement of facts, then you would come and will come to the same conclusion. Could I get you to focus on another point? Sure. Which is the retaliation allegations. So as I understand it, on August 8th of 2010, Lemley filed a formal complaint with Cooper, right? Yes. And then on August 31st, Lemley in some formal way opposed the giving Miller some time off by I guess Gatwood did that? Correct. Gatwood sent Miller home. And so Lemley protests that. Then in September 1, just a day later, he's sent home for the rest of the week. Now I understand that he was given full salary. He was sent home with pay. I think the standard is for retaliation, and I want you to respond to this, is would the action of the employer be such that it would discourage someone from making a complaint in the future? Why isn't being sent home even with pay? Why wouldn't that be perceived by other employees in the agency as a reprimand or a discipline? Well, it might be. Wouldn't that discourage people from protesting how other employees are treated? Well, according to Mr. Lemley, it would have discouraged him or he wouldn't have resigned his position in Graham County. But I think the question is whether a reasonable person would be deterred. And under these circumstances where he's already completed the work for the ACA audit and the facility has determined that they didn't need him to continue to work on that because the auditors left and they were substantially finished. And so in Mr. Gatwood's mind, he's thinking, okay, you've done your work for the week, take the weekend off. And, you know, now in hindsight, Lemley does protest that. But I don't think a reasonable person under those circumstances would think that that would deter them from asserting a claim on behalf of themselves or someone else. I just don't think it meets the standard. Well, so you think that Lemley should have understood it as a reward for doing a good job on the audit? No, I don't. I don't think he necessarily has to consider a reward. And I don't. But it's a day off or it's a few days off with pay, basically, right? So it's either a reward as a couple days of vacation or it's a message of something else. Well, sure. I mean, the message of something else is the thing that I think the Court should focus on. And again, I don't think that message of something else under these circumstances meets the standard for something that would potentially dissuade someone from bringing a claim. But even if it did. That's not a question of fact that a fact finder would have to find? And if it is, then he's made a — then he's arguably made his prima facie case. So then the next question is whether or not there were legitimate nondiscriminatory reasons for doing that. And Mr. Gatwood's testified, it's undisputed, why he did what he did. And there's no evidence that that was pretextual. There's no evidence in this case whatsoever. So to survive summary judgment, he has to be able to come forward with some substantial evidence that that decision by Mr. Gatwood was really for discriminatory purposes. And it just doesn't exist in this case. With respect to constructive discharge, actually this applies equally to Ms. Miller's claim. First of all, I don't think she's made out a claim for hostile work environment. And I think what the cases tell us on constructive discharge cases is the circumstances to justify a constructive discharge have to be at least as severe as a hostile work environment case. I don't think Mr. Lemley meets that standard in this case. The Court can look to the Brooks case, 229 Fed 3rd at 930, and also at Monat v. Bank of America, 339 Federal 3rd, 792, for a discussion as to what it takes to make out a cognizant plausible constructive discharge claim. And, again, I think that applies equally to Ms. Miller's case. There's nothing that would have happened after, say, October 1st of 2010 that would have caused a reasonable person, either Miller or Lemley, to believe that whatever it was that had happened in the past was going to continue. As to Ms. Miller, for instance, it was the situation with respect to a calendar. There were two days where she was going to be working a total of six hours with Mr. Luzinia. That was because Mr. Luzinia was going to cover for Mr. Pruszynski, who was going to be on vacation. Well, Mr. Pruszynski testified, and it's not disputed, that he was going to be back to work on October 6th. So if, arguably, she wanted to take those couple days because she didn't want to work with Mr. Luzinia, and the county, by the way, was trying to accommodate her, then that wouldn't have continued past October 6th. And, again, with respect to Mr. Lemley, there's absolutely no evidence in this case that would support a constructive discharge case under the circumstances that his working environment was more egregious than a hostile working environment. Which, again, he's not making in this case. With respect specifically to Mr. Lemley, you've got the disparate treatment, you have the retaliation. And, again, as to the retaliation, he has to prove that but for his protected activity, that the actions he complains of would not have been taken. And, again, in this case, I don't think he makes a prima facie case as to any of his claims as to retaliation. Certainly nothing that overcomes the county's proffered legitimate nondiscriminatory reasons for doing what they did. For instance, in the May 25th, 2010 evaluation, he complains about a mark of needs improvement on maintaining professional respect for all subordinates. With respect to the disparate treatment case, that had no material impact on his conditions of employment. So it fails. There's no prima facie case. With respect to the disparate treatment case, hypothetically, that, as Judge Smith pointed out, could potentially be viewed as something that could chill someone's behavior. But, again, that's not tied to any protected activity. Mr. Lemley has suggested that he made some complaint about Sergeant Luzania in May, I think May 19th, about six days before he received this, needs improvement. The complaint with respect to Sergeant Luzania was not protected activity. There's nothing in the record that proves that what he complained of was based on gender discrimination. Or protecting someone else from gender discrimination. Which, at the very least, has to happen in a case like this. You have to at least let the employer know that you're complaining about something that would fall within the purview of Title VII. And that simply didn't happen in this case until, I think it was after August of 2010 when he filed his formal complaint. With respect to the May 26th, Mr. Aranda took over Mr. Luzania's supervision of the sergeants. It's the same issue. It's not tied to any protected activity as to the retaliation claim. And with respect to the disparate treatment claim, it had no impact on his wages or interfered with any material condition of his employment. So it fails in the prima facie case on that side of the equation. With respect to, we've talked about the September 1st incident. And we've talked about the constructive discharge. With respect to the comp time not being paid after he was terminated, that was an honest mistake. And there's no evidence that it was anything but an honest mistake. So I don't believe he's, well, first of all, I don't think the court has jurisdiction over it. Because that and nothing similar was raised in the EEOC charge. But assuming it was or could have potentially sprung from something that was raised in the EEOC charge, the Can I just bring you back to this? I'm still kind of struggling with this question of the complaint being sent, the complaint on August 31st and then being sent home for two days on September 1st. And if the standard is that it's something that would discourage an employee in the future from making a complaint, and your response is, well, the county proffered a legitimate nondiscriminatory reason. He didn't come up with anything that showed that it was a pretext. And I'm trying to figure out, well, what could he show to show it was a pretext? Is that even the standard? Isn't it a question of whether it is on retaliation, it's a question of whether an objectively reasonable person would view this as punishment for a protected activity? Isn't that the standard? Yeah, that is the standard. And the protected activity in this case. But why does pretext come in? Why does the plaintiff have to come up with a showing of pretext? Sure. Isn't it a different question? Well, no. In order to survive summary judgment, not only does the plaintiff in a retaliation case have to make out a pretext, but he has to make out a pretext that shows that he is being punished for the complaint he brought. Isn't that enough to raise a factual question? I mean, does there have to be some independent evidence, smoking gun kind of evidence that suggests that we're giving him, the county is giving him the two days off to send him a message or send other people a message? How is anyone ever going to come up with that evidence? It doesn't have to be a smoking gun, but it does have to be something, Your Honor. There does have to be at least substantial circumstantial evidence from which a jury could reasonably infer that it was something other than a legitimate reason, that it was a discriminatory. And I'm out of time. Thank you. We'll hear rebuttal. Mr. Lemley's being sent home went down on this wise. Candy was sent home. He called back and protested. And in essence, Mr. Gatwood told him, fine, you don't like it. You go home, too. And Mr. Lemley's reply was, fine, I'll go home and I'll take some of this comp time that you owe me. And Mr. Gatwood says, no, you won't. You will take your vacation time. And so basically they punished him by saying, you don't get to take vacation that you would otherwise be allowed to take, because they wouldn't allow him to take comp time. So that's, it was clearly, in my view, it was clearly retaliatory and punitive towards him. Where's that conversation in the record? It's not there verbatim, but... I understand there's not a recording of the conversation, but what are the pieces of evidence that you point to for that back and forth? I believe it's in my statement of facts. Your statement of facts have to rely on some evidence. So what's the evidence? I'm not sure. It may be in his affidavit. Well, you don't want to waste your time looking for it. I cannot pull the citation out. So the sum and substance of that conversation is what again? You're protesting Mrs. Miller being sent home. Because you are protesting, you will also be sent home. Mr. Lemley says, okay, if I'm sent home, I will take the comp time. And Mr. Gatwood says, no, you will not be allowed to take comp time. You have to take vacation time. So you're telling us there's record evidence that supports that there's a conversation of that sort that occurred? Yes. Counsel, it looks like at ER 242, which is page 11 of your comp statement, the client's affidavit, there are some paragraphs. When I told Gatwood I would use management leave or comp time for the rest of the week after the ACA visit, Gatwood told me I could not do so and I would have to use annual leave, thus affecting my benefits. Is that what you're referring to? Yes. Thank you. What strikes me about his negative evaluation is, and there was a letter about that same time that came out, and I think that what they offer as their neutral, innocent reasons for the negative evaluations are, in fact, prove and corroborate his allegations of retaliation. There's a letter that says, you know, you're not showing respect for your superiors, and you're not maintaining good relationships with people below you. And, you know, when people below you are discriminating and you reprimand them for them, that doesn't help your relationship. And when your superiors want you to stop doing that and you insist on doing it, again, that's not showing respect for your superiors and the policy and the way things are done in Graham County, Arizona. I believe that the ‑‑ I remember reading in my brief that Mr. Lemley reprimanded Lusania for insubordination and also for his interaction with a female subordinate. And that comes into national origin discrimination, because he was given the negative evaluation and stripped of his authority because he was violating the policy that Hispanics were immune from discipline. Their explanation for the comp time being just an honest mistake cannot fly when the way in which they administer it is a violation of the law. That's not a legitimate nondiscriminatory reason. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. We'll move to the third case on this morning's calendar, National Association for the Advancement of Colored People v. Horn.
judges: Clifton, Owens, Smith